In the Matter of DAVID A. ROSOW, INCORPORATED, Debtor.

The STOP & SHOP COMPANIES, INC., Plaintiff,

v.

DAVID A. ROSOW, INCORPORATED, Debtor, Defendant.

Bankruptcy No. 2–80–01081.

Adv. No. 2–80–0410.

United States Bankruptcy Court, D. Connecticut.

Aug. 4, 1981.

Irving D. Labovitz, Springfield, Mass., for debtor-defendant.

Elizabeth B. Leete, Hartford, Conn., for plaintiff.

Richard H. Seidman, Hartford, Conn., for creditors' committee.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

In this proceeding, the plaintiff petitioner offers a variant theory of recovery to that presented in an earlier adversary proceeding involving precisely the same facts. The proceeding at bar was initiated by a petition filed July 7, 1981 and also by a complaint filed July 21, 1981. Since the desired relief and the arguments thereunto pertaining under both the petition and the complaint are identical, the parties have agreed that the court's decision will apply to both pleadings.

The relevant facts are set forth in my Memorandum and Order dated April 2, 1981, and may be recapitulated briefly thus. David A. Rosow, Incorporated (Rosow), the debtor, sold quantities of beer to the Stop & Shop Companies, Inc. (Stop & Shop). In June, 1980, prior to Rosow's filing of its Chapter 11 petition, Stop & Shop made an overpayment to Rosow because it was mistakenly sent double invoices, which overpayment ultimately amounted to $33,870.52. After Rosow filed its petition on October 22, 1980, Stop & Shop sought to reclaim its overpayment by a complaint filed December 15, 1980. Stop & Shop thereafter added as defendant to its reclamation complaint Hartford National Bank (HNB) as the depository of Rosow funds. Eventually, Stop & Shop abandoned its claim against Rosow and proceeded against HNB only. After trial of the matter, this court rejected Stop & Shop's request for relief, holding that upon the filing of Rosow's petition, Stop &

Shop, by its overpayment to Rosow, became an unsecured creditor and subject to the rule of equality of distribution of estate assets. The court noted that the request of Stop & Shop to have the court

> restore the parties to the condition they enjoyed before the mistake occurred, overlooks the fact that the money, in the scenario it envisages, must come from somewhere. The only source for such a payment would be funds otherwise available to unsecured creditors. *Memorandum* at 3.

The petition of July 7, 1981 and the complaint of July 21, 1981, while not couched in identical terms, were filed with identical intent pursuant to 11 U.S.C. § 510(c).[1] Stop & Shop claims that under the doctrine of equitable subordination set forth in § 510(c) it is entitled to have the claims of all other unsecured creditors subordinated to its claim. It argues that the purpose of Congress in adopting § 510(c) was to codify the doctrine enunciated by the Supreme Court in certain pre-code cases [2] establishing exceptions to the rule of equality of distribution. Stop & Shop relies particularly upon language in the legislative history of the code that

> it is intended that the term "principles of equitable subordination" follow existing case law and *leave to the courts development of this principle.* 124 Cong.Rec. H 11,095 (Sept. 28, 1978) S 17,412 (Oct. 6, 1978). (Emphasis supplied by Stop & Shop.)

Stop & Shop avers that the meaning to be placed upon the emphasized language in the foregoing passage from the legislative history is that courts are free to adopt equitable principles of any scope to permit application of the doctrine of equitable subordination wherever the equities pertaining to one unsecured debtor exceed those of other unsecured debtors, and alleges that the equities of Stop & Shop's claim for return of assets of the estate equal to its mistaken overpayment are greater than the equities of other unsecured creditors in said assets.[3] Stop & Shop concedes that pre-code case law permitted equitable subordination only in instances of self-dealing by corporate insiders and similar wrongful behavior. Stop & Shop presents the instant proceeding to the court as an opportunity to extend the doctrine of equitable subordination beyond the parameters established by existing case law, based on the enactment of § 510(c). In effect, Stop & Shop is not requesting the relegation to inferior status, on equitable grounds, of a claim by wrongdoer, but rather elevation of an unsecured claim, on equitable grounds, over the claims of other innocent unsecured creditors. To do so would not be merely to extend the doctrine of equitable subordination. Rather, it would be to authorize the court to set priorities in place of those legislated by Congress. Such is not the law, nor should it be.

> It [*Pepper v. Litton*] does not hold that the court may set up a subclassification of claims within a class given equal priority by the Bankruptcy Act and fix an order of priority for the sub-classes according to its theory of equity. *In re Columbia Ribbon Co.*, 117 F.2d 999, 1002 (3rd Cir. 1941).

---

1. § 510. *Subordination*

   .     .     .     .     .

(c) ..., after notice and a hearing, the court may—
    (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest ....

2. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) and *Taylor v. Standard Gas and Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1938).

3. Stop & Shop argues that its claim "has greater equity" than those of other unsecured creditors because a party who mistakenly pays money suffers greater injury than one who delivers goods for an agreed retail price due to the fact that the former loses all of the money paid by mistake whereas the latter loses only the wholesale price of the goods, that one who extends credit voluntarily assumes a risk of non-payment, but one who mistakenly overpays does not voluntarily assume such risk of loss, and that permitting retention of its overpayment for the benefit of unsecured creditors will unjustly enrich them and confer a benefit which they are not entitled to retain.

Despite the equities claimed by Stop & Shop, its theory of recovery pursuant to 11 U.S.C. § 510(c) cannot overcome a principle as central to bankruptcy law as equality of distribution of estate assets. Stop & Shop's petition and its complaint seeking equitable subordination of all other unsecured creditors in its favor are hereby denied, and it is

    SO ORDERED.