## In re CAROLINA MILLS, Inc.
### No. 4412.

United States District Court
E. D. South Carolina,
Florence Division.

Dec. 22, 1950.

McCants & McCants, Columbia, S. C., Hagood, Rivers & Young and Buist & Buist, all of Charleston, S. C., Willcox, Hardee, Houck & Palmer, Florence, S. C., for creditors.

Henry Hammer, Columbia, S. C., for trustees.

H. H. Edens, Columbia, S. C., W. M. Nicholson, Charlotte, N. C., for respondent.

WARING, Chief Judge.

The United States has filed claims for various taxes due it consisting of Federal Unemployment taxes, Section 1605(b), Internal Revenue Code; Federal Insurance Contributions, Section 1420(b), Internal

Revenue Code; withholding taxes, Section 1627, Internal Revenue Code, subchapter D and E of Chapter 9, 26 U.S.C.A. §§ 1605 (b), 1420(b), 1627, 1621 et seq.; 1630 et seq No question is raised as to the principal amount of these taxes.

However, there is a question raised as to what allowance of interest on them should be made. The Referee allowed the full amount of the taxes with interest thereon at the rate of 6% per annum up to November 11, 1948, the time of the bankruptcy proceedings. The Government has filed exceptions to the report and takes the position that interest is not stopped by the institution of these proceedings, but that the claim of the Government should be allowed to carry interest at the legal rate until the actual date of payment.

■ These three claims will, of course, be considered as one since they are on a parity with each other and since all tax claims of the United States or any state or subdivision are on the same footing and are entitled to the same parity and treatment. There can be no question in regard to this since the decision of the Supreme Court of the United States in the case of State of Missouri v. Ross, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46.

As to the allowance of interest generally on governmental tax claims in bankruptcy, the decision of the same court in City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, would appear to be equally definitive.

However, on behalf of the Government, it is earnestly contended that the Saper decision applies only to ordinary bankruptcy adjudications and is not applicable to proceedings for re-organization under Chapter X, 11 U.S.C.A. § 501 et seq. Let it be first distinctly understood that the Saper case was decided as recently as March 1949 and is under the present bankruptcy Act, 11 U.S. C.A. § 1 et seq., with its various amendments including the sweeping changes brought about by the Chandler Act of 1938 wherein were embodied the new provisions allowing re-organization proceedings, particularly through Chapter X. A careful reading of the opinion in that case convinces one that the Court was considering the overall matter of tax priority in bankruptcy proceedings and the interesting and conclusive reasoning of the opinion shows that the Court was of the opinion that interest would not be allowed as here claimed by the Government. The Court says, 336 U.S. at pages 337–338, 69 S.Ct. at page 559; "The Court of Appeals [2 Cir., 168 F.2d 268] concluded that by the 1926 amendment and the Chandler Act, Congress assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest. We think this is a sound and logical interpretation of the Act after those amendments to (paragraphs) 64, sub. a, and 57, sub. n. Considered in conjunction with the general rule against post-bankruptcy interest as well as (paragraph) 63's limitations of interest on other claims to date of bankruptcy, they compel our conclusion, already stated, that the statute as amended did not contemplate any exception in favor of tax claims."

The Government has filed an interesting and ingenious brief combating the views enunciated by the Referee. The major portion of this brief is given over to the discussion of the proceedings of Congress leading up to the adoption of the amendments to the Bankruptcy Act allowing re-organization. These arguments are skillfully presented and might well have been persuasive before the decision in the Saper case. And I am sure the same arguments were presented in that case, but the Court's decision effectively and finally concluded these matters, and there can now be no question of the present meaning of the Act.

The Government apparently recognizes the potency of the Saper decision and attempts to differentiate it by taking the position that the Court never intended its ruling or reasoning to apply to Chapter X. In Chapter X, Section 102, the following is provided: "The provisions of chapters I to VII, inclusive, of this Act shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter: Pro-

vided, however, That Section 23, subdivisions h and n of section 57, section 64, and subdivision f of section 70 shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with pursuant to the provisions of chapters I to VII inclusive. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors', and 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this chapter. For the purposes of such application the date of the filing of the petition in bankruptcy shall be taken to be the date of the filing of an original petition under section 128 of the Act, and the date of adjudication shall be taken to be the date of approval of a petition filed under sections 127 or 128 of this Act, except where an adjudication had previously been entered."

The only exception above named that can possibly be held to apply would be Section 57, sub. n. and Section 64. The first of these says: "Except as otherwise provided in this Act, all claims provable under this Act, including all claims of the United States and of any State or subdivision thereof, shall be proved and filed in the manner provided in this section."

Section 64 relates to debts which have priority. Neither of these sections appear to, in any way, affect the matter of interest.

But the Government calls attention to Section 199 of Chapter X which authorizes the Secretary of the Treasury to accept or reject a plan and gives power to accept less than the full amount of the claim. The rights and powers given by this section do not appear to me to strengthen the claim of the United States. The only influence that the section would have upon the argument here would seem to show that the authors of the Chandler Act intended to make even more liberal the usual provisions of tax claims in bankruptcy by allowing a discretionary reduction.

Section 200 of the same act, which the Government refers to, merely provides that, under the provisions of this Chapter, the rights, duties and liabilities of creditors shall be the same before the approval of the petition as in an ordinary bankruptcy proceeding before adjudication and that the approval of the petition will bring about the same status as an adjudication.

■■ The argument that any of these provisions of the Act set aside the clear meaning of the Act as explained in the Saper case has no appeal to my reason. It is quite clear that the intendments of these provisions and many others is that the ordinary rules of bankruptcy procedure shall apply in reorganization proceedings except that, of course, many of them cannot be entirely applicable and only in such cases they do not apply. It would have been so easy, as is well pointed out by Mr. Justice Jackson, for the Congress to have clearly set forth its desire that tax liens should draw interest until payment. Congress has not done so. And, as a matter of fact, Congress, in enacting the Chandler Act and adopting the plan for reorganizations under Chapter X has moved forward to enacting a more progressive and lenient approach to aiding corporations struggling under the burden of debt and economic stress, and the Act is one which holds out a helping hand to business enterprises with a view to attempting to put them back on their feet and set them going again. To adopt the view presented here by the Government would be to say that an ordinary bankrupt should be treated with more consideration than a sick debtor struggling to be brought back to life in a reorganization proceeding. The whole theory and purport of the Act is just the reverse. And while these considerations are not determinative, they should influence the decision of the construction and meaning of the Act. In my opinion, the Saper case is entirely determinative of the issue here, and the attempt to circumvent its clear meaning is futile.

For the foregoing reasons, I adopt and confirm the decision of the Referee in disallowing the claim for interest subsequent to November 11, 1948 and overrule the exceptions to his report.

And it is so ordered.