In the Matter of **PUSEY AND JONES CORPORATION**, Bankrupt.

No. 1705.

United States District Court
D. Delaware.
March 23, 1961.

234

Edward W. Cooch, Jr., Cooch & Taylor, Wilmington, Del., for Deemer Steel Casting Co.

John Biggs, III, Wilmington, Del., for trustee.

LEAHY, Senior District Judge.

1. Deemer contends that the "six-months' rule" which had its origin in the railroad receivership cases,[1] should be and has been extended to private corporations. To support this contention, it relies upon the rule of In re Columbia Ribbon Co.,[2] reasserted by this Court in Wilmington Speedway Inc.,[3] the cases of Dudley v. Mealey[4] and Diamond State Motor Freight, Inc.,[5] and Collier on Bankruptcy, (14 ed.) § 9.13 [5].[6] The cited authority does not, upon analysis, provide the desired support. The rule of Columbia Ribbon Co. involves the priority of expenses incurred during the time of reorganization and has no applicability to expenses incurred prior to that time. In Dudley v. Mealey, the Court held only that provision for paying the claims for necessities furnished within six months did not automatically invalidate the plan.[7] Although favorable in its language, the case, as a proposition of law, does not support Deemer's contention. The Matter of Diamond State Freight Inc. is also not in point. There the application of the six months' rule in the plan was unopposed. The Court in that case did not raise this objection sua sponte since the plan had apparent creditor acceptance and was not unfair or unequitable on its face. Finally, while a portion of § 9.13 [5] of Collier is relevant,[8] an examination of the cases in its footnote reveals a lack of supporting authorities.[9]

1. Fosdick v. Schall, 1878, 99 U.S. 235, 25 L.Ed. 339; The Present Status of The Six Months' Rule, 34 Columbia Law Review, 230 (1934); 6 Collier on Bankruptcy § 9.13 [5] (14 ed.), p. 2852.

2. 3 Cir., 117 F.2d 999.

3. D.C.Del., 167 F.Supp. 630.

4. 2 Cir., 147 F.2d 268, certiorari denied 325 U.S. 873, 65 S.Ct. 1415, 89 L.Ed. 1991.

5. Bankruptcy Matter No. 1510 (unreported).

6. There it is said:
"The 'six-months' rule', as it has been known, had its origin in railroad receivership cases in the federal courts and was eventually extended, at least in the lower federal courts, to other public and quasi-public corporations."

7. This is in agreement with the opinion of Judge Baker in In re Warner Coal Corporation, D.C.N.D.W.Va., 83 F.Supp. 961, affirmed sub nomine Wheeling Electric Co. v. Mead. 4 Cir., 177 F.2d 718.

8. See that portion quoted in note 6, supra.

9. Of the twenty-one cases cited by Collier as authority to support his textual statement, only three concern purely private corporations. These are Dickinson v. Saunders, 1 Cir., 129 F. 16; Olyphant v. St. Louis Ore & Steel Co., C.C., 22 F. 179, and Bowen v. Hockley, 4 Cir., 71 F.2d 781, 94 A.L.R. 856. Both the Dickinson and Olyphant cases involved claims for wages earned prior to receivership. The Court in Dickinson specifically noted wages, as distinct from other debts, are accorded special consideration in Bankruptcy:
"The Bankruptcy Act of July 1, 1898 c. 541, § 64b, 30 Stat. 563 [U.S.Comp. St.1901, p. 3447, 11 U.S.C.A. § 104, sub. b], provides priority for wages due to workmen, clerks, or servants, earned within three months before the date of the commencement of proceedings in bankruptcy, not to exceed $300 to any claimant. Turning, therefore, either to the local statute, or to what, for the federal courts, is the higher authority, a

The untenableness of Deemer's contention becomes apparent upon examination of the development of the "six-months' rule" against the underlying policies of the bankruptcy statutes. The genesis of the "six-months' rule" is found in decisional judge-made law because there is clearly no statutory font. In fact, apart from certain limited exceptions provided by statute,[10] the policy of the Bankruptcy Act has always been to eliminate all special individual priorities and preferences in order to allow creditors to share in the bankrupt estate equally, within their class.[11] In the framework of this general policy, courts (i. e., judges), starting with railroad reorganizations and extending to reorganizations of other quasi-public corporations, hewed out a limited exception.

This exception has come to be known as "the six-months' rule." Stated simply, the rule grants prereceivership claims incurred as operating expenses six months before the receivership an absolute priority over secured and unsecured creditors.[12] The rule developed because of court determination there is a public interest in the continued operation of public and quasi-public corporations, and incurrence of operating expenses on a credit basis is necessary for such continued operation, and because credit would not be extended unless such claims are given priority in the subsequent reorganization of the debtor company. This public interest in the continued operation of a transportation system or a utility company is not present in the case of a private corporation.[13] Indeed,

priority in favor of creditors of the class of the interveners in this case is declared as a rule of administration, * * each legislative system declares a policy which a chancellor, in hunting about for some analogy to guide the equitable administration of his office, might lay hold of under some circumstances." 129 F. at page 20.

The Bowen case involved an award made under the Maryland Workmen's Compensation Act prior to Receivership. The Court found the award was within the spirit, if not required by old 28 U.S.C. § 124, now 28 U.S.C. § 959(b), which provides:

"Management of property by receivers.

"Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. * * * "

Thus, none of the cited supporting cases would appear to be good authority for the general extension of the six months' rule to private concerns, as the result which they reach is bottomed on considerations other than those of extension of credit.

10. See e. g. § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104.

11. See Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890. The Court, through Justice Black (324 U.S. at page 210, 65 S.Ct. at page 597):

"But, historically one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets; to protect the creditors from one another. And the corporate reorganization statutes look to a ratable distribution of assets among classes of stockholders as well as creditors."

11 U.S.C.A. § 96; J. De Santo v. Noto Lumber Co., D.C., 153 F.Supp. 801, 802.

12. 6 Collier on Bankruptcy (14 ed.) § 9.13 [5], n. 36 (cases cited therein); The Present Status Of The Six Months' Rule, 34 Columbia L.Rev. 230.

13. Undoubtedly, there is a broad public economic interest in keeping an industry or a segment of an industry active. It was in the service of this interest that Chapters X and XI were promulgated. A general adoption of the six-months' rule to all receivership situations, however, would violate the statutory scheme in that it extends the statutory priority of administration expenses without subjecting the incurrence of such claims to the scrutiny of the receiver. Indeed, at that point in time, it would not yet be determined whether the corporation should or should not continue to exist.

Query, whether an established practice of applying the six months' rule to all reorganizations and receiverships would introduce an undesirable imponderable in-

in many instances practical experience has shown interests, public and private, of creditors and equity holders, might be better served by early reorganization or liquidation. Considered reflection leads to the view the exception of the six-months' rule should not be extended to all private corporations. This attitude has been adopted by some legal commentators,[14] apparently by the Congress,[15] and, probably accounts for the fact that no case has been found where the six-months' rule has been squarely applied to a private corporation.[16] Other courts concur in this result.[17]

██ 2. Even if it were determined the six-months' rule should apply to the

reorganization of a purely private concern, it should not apply where, as here, the attempted reorganization soon fails and the corporation is adjudicated bankrupt. Priority of debts in bankruptcy is governed by § 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104 where claims for expenses or services accruing prior to the petition are excluded.[18] As stated by Judge Baker in In re Warner Coal Corporation,[19] the courts have been unanimous in holding that this Act must be construed strictly.

The Referee's decision is affirmed. An order may be submitted.

to the already complicated techniques of long term bond and mortgage financing. And, the public consensus does not equate a railroad for commuting suburbia with a company manufacturing card tables and bridge lamps.

14. See, e. g.: Applicability of The Six Months' Rule to Workman's Compensation and Officer's Salary Claims, 44 Yale Law Jour. 1107 (1935).

15. 6 Collier on Bankruptcy (14 ed.) § 9:13 [5], p. 2855:
"Former § 77B contained a provision which by its own terms incorporated the six month rule. This provision, however, was omitted when Chapter X was enacted, chiefly because of doubts as to whether the doctrine could constitutionally be extended to private corporations and also because of a fear that the application of the rule might raise many problems not present in equity receiverships." Citing H.R. 12889, 74th Cong. 20 Sess. (1936) 74. Collier, however, goes on to agree with Gerdes [Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act (1938) 52 Harv.L.Rev. 1] that the deletion is of "no decisive significance."

16. The dicta in Dudley v. Mealey, 2 Cir., 147 F.2d 268, was undoubtedly suggested

by the equities of the situation. Although the bankruptcy court is a court of equity, nevertheless, as our Court of Appeals said in In re Columbia Ribbon Co., 3 Cir., 117 F.2d 999, 1002, its equitable powers must be exercised within the limits laid down by the Bankruptcy Act and subject to its specific provisions. It might be added the exercise of the court's equitable powers should also be confined to the policies underlying the Act. An extension of the six-months' rule to all reorganizations and receiverships, as suggested by the court's language in Dudley v. Mealey would be a subversion of the Act's basic policy of allowing creditors to share in the bankrupt estate equally, within their class.

17. In re Richards, D.C.M.D.Pa., 43 F. Supp. 733; In re Warner Coal Corp., D.C.N.D.W.Va., 83 F.Supp. 961, affirmed sub. nomine Wheeling Electric Co. v. Mead, 4 Cir., 177 F.2d 718; Matter of James L. Stubbs (No. 1569, D. of Del., unreported).

18. 3 Collier on Bankruptcy (14 ed.) § 64.102, p. 2063.

19. Note 7, supra.