KRUPANSKY, Circuit Judge.
This action joins inquiry into the longstanding judicially evolved application of *172 the “net result rule” as the criteria for determining a preferential transfer as defined in 11 U.S.C. § 547 of the Bankruptcy Reform Act of 1978. An involuntary petition in bankruptcy was filed against Fulghum Construction Corporation (Fulg-hum) whereupon the trustee initiated the instant proceeding to, inter alia, avoid as preferential transfers certain monetary transactions which transpired between Fulghum and its sole shareholder, Ranier &. Associates (Ranier), during the one year period immediately preceding the filing of the bankruptcy petition. Both the bankruptcy court and reviewing district court adjudged that application of the net result rule, incorporated into 11 U.S.C. § 547(b)(5) as a judicial gloss, foreclosed a finding that the transfers were preferential. See: In re Fulghum Construction Corp., 7 B.R. 629 (Bankr.M.D.Tenn.1980); In re Fulghum Construction Corp., 14 B.R. 293 (M.D.Tenn. 1981). The operative facts, detailed in the lower courts’ opinions, disclose that approximately 100 transactions occurred between Ranier and Fulghum during the year immediately preceding the filing of the bankruptcy petition. The aggregate amount of the payments by Ranier to Fulghum exceeded the aggregate amount of the payments tendered by Fulgham to Ranier during this period and the value of the estate was accordingly appreciated.
Preferential transfers which may be avoided by the trustee are defined in 11 U.S.C. § 547(b):
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owned by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provision of this title.
As is facially evident from this provision, all five enumerated criteria must be satisfied before a trustee may avoid any transfer of property as a preference. See: In re Bishop, 17 B.R. 180, 181-82 (Bkrtcy.N.D.Ga. 1982). Section 547(b) is proscribed by its own terms to the numerous “defenses” available to creditors which appear in § 547(c) and which, if applicable, preclude the trustee from avoiding the § 547(b) preferential transfer. Particularly, § 547(c)(4) provides:
(c) The trustee may not avoid under this section a transfer—
* * * * * *
(4) to or for the benefit of a creditor, to the extent that, after such transfer,
. such creditor gave new value to or for the benefit of the debtor—
(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor
Section 547(c)(4) is perhaps most accurately characterized as a “subsequent advance rule”. Preferential transfers as defined in § 547(b) may not be avoided by the trustee if “after such transfer, such creditor gave new value”. Id. See: In re Bishop, supra; In re Garland, 19 B.R. 920 (Bkrtcy.E.D.Mo. 1982); In re Rustia, 20 B.R. 131, 135 (Bkrtcy.S.D.N.Y.1982); In re Fabric Buys of Jericho, 22 B.R. 1013, 1016-17 (Bkrtcy.S. *173 D.N.Y.1982); In re Hersman, 20 B.R. 569 (Bkrtcy.N.D.Ohio 1982).
In the action sub judice, the district court adjudged, and the parties do not dispute on appeal, that the criteria of § 547(b)(1) through (b)(4) have been satisfied. In addressing the application of § 547(b)(5) to the facts of the case at bar, however, the district court relied upon its equitable powers to justify its application of the net result with the following rationale:
[T]his Court must agree with the Bankruptcy Court that two “net result rules” actually exist in bankruptcy law. One, that of section 547(c)(4) and insisted upon by the trustee, is statutory. The other, that applied by the Bankruptcy Court, is nonstatutory, a judicial gloss upon the requirements of section 547(b).
14 B.R. at 303. Applying the net result rule as a condition implicitly incorporated into § 547(b)(5) and, correspondingly, a threshold requirement to support a preferential transfer, the district court observed that the net effect of all the transactions between the debtor, Fulghum, and the creditor, Ranier, appreciated the value of the estate and, accordingly, the transfers could not be avoided by the trustee as preferences. Upon concluding that no preferential transfers existed it was unnecessary for the district court to identify the defenses available to the creditor under § 547(c).
The net result rule is a judicially created doctrine, predicated upon principles of equity, which evolved shortly after the enactment of the Bankruptcy Act of 1898 to presumably rectify what was judicially perceived to be inequities in bankruptcy law. See: In re Garland, supra, 19 B.R. at 922-25 (artfully documenting development of this doctrine); In re Bishop supra, 17 B.R. at 183-85 (same). As an equitable doctrine its application, of necessity, must “comport to and remain compatible with the prevailing legislative intent”. In re Bell, 700 F.2d 1053, 1057 (6th Cir.1983); United States v. Killoren, 119 F.2d 364, 366 (8th Cir.1941). Logic dictates that judicial interposition of the net result rule into § 547(b)(5) vitiates the congressional intent clearly reflected both on the face of § 547 and in the legislative history of the enactment.
Since the net result rule is “broader” •in scope than the subsequent advance rule of § 547(c)(4), engrafting the former doctrine upon § 547(b)(5) as a threshold requirement for the qualifying preference would render the defense incorporated in § 547(c)(4) impotent. The broader scope of the net result rule permits its utilization by the creditor irrespective of whether the value furnished by the creditor to the debtor is advanced either before or after the transfer from the debtor to the creditor. Contra-wise, the subsequent advance rule of § 547(c)(4) is more circumscribed in application and forecloses avoidance of the transfer by the trustee only if the creditor provides additional value after the transfer from the debtor to the creditor.[1] A “judicial gloss” which significantly restricts the statutory definition of “preference” and pragmatically emasculates the creditor defense thereto as intended by Congress in § 547(c)(4) constitutes nothing less than legislation by judicial decree.
Moreover, judicial interposition of the net result rule into § 547(b)(5) finds no sanction in the legislative history of the Bankruptcy Reform Act of 1978. The legislative proceedings attendant to the promulgation of § 547(b)(5) are significantly devoid of any allusion to the net result rule. Contrawise, the House Report discussing the subsequent advance rule, § 547(c)(4), incorporates concise language reflecting the intent of .Congress:
The fourth exception [§ 547(c)(4)] codifies the net result rule in section 60c of current law. If the creditor and the debtor have more than one exchange during the 90-day period, the exchanges are netted out according to the formula in *174 paragraph (4). Any new value that the creditor advances must be unsecured in order for it to qualify under this exception. (Emphasis added).
H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 374, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6330. The Senate Report is identical. S.Rep. No. 95-989, 95th Cong., 2d Sess. 88, reprinted in 1978 U.S.Code Cong. & Ad.News 5874. Thus, it would appear that the “net result rule” is an anachronism of § 547(c). As has been noted,
Whatever the net result rule may have been under the prior Bankruptcy Act, Congress has indicated that, under the Bankruptcy Code, the rule is to be applied accordingly to the formula set forth in section 547(c)(4).
In re Garland, supra, 19 B.R. at 926. Congressional metamorphosis has transformed the judicially created net result rule into what may be characterized as a subsequent advance rule and has codified this augmented version into § 547(c)(4) rather than § 547(b)(5). See also: In re Bishop, supra, referencing: 2 Norton Bankr.L. & Prac. § 32.20 (net result rule “is of doubtful current validity”); 4 Collier on Bankruptcy § 547.40 (seriously questioning continuing vitality of the net result rule in the wake of the Bankruptcy Reform Act of 1978); Report of the Commission on the Bankruptcy Laws of the United States, H.Doc. No. 93-137, 93rd Cong., 1st Sess., Pt. 1, 210-211 (1973) (“A true ‘net result’ rule would total all payments and all advances and offset the one against the other. This is not allowed under the Commission’s recommendation, since the advance to be offset must be subsequent to the preference.”)
Section 547(b) deliberately defines a preference as a “transfer”, rather than as an aggregate of transfers or netting of transactions between the creditor and debtor, and § 547(c) artfully articulates equitable “defenses” whereby the trustee may be foreclosed from avoiding the preference. In particular, § 547(c)(4) permits a netting procedure to be applied when the debtor and creditor are both recipients and initiators of transactions. Construed in pari materia, § 547(b) and (c) disclose a calculated legislative scheme and intent to implement equitable considerations which the judiciary at the turn of this century adjudged as lacking and responded by evolving the net result rule. This legislative response reflected in the promulgation of § 547(b) and particularly § 547(c)(4) mirror the congressional version of equitable principles, expressed as the subsequent advance rule, to be incorporated into the 1978 revision of the Bankruptcy Act.
Accordingly, the judgment of the district court dismissing the trustee’s complaint to avoid transfers from Fulghum to Ranier as preferential is hereby VACATED and this case is REMANDED for further proceedings consistent with this opinion. The judgment of the district court is AFFIRMED in all other respects, including the dismissal of (1) the trustee’s amended complaint seeking to set aside the sale of construction equipment, and seeking to pierce Fulghum’s corporate veil and (2) Ranier’s claim for damages arising from the trustee’s alleged improper retention of construction equipment, for the reasons articulated in the district court’s memorandum opinion.

. Bankruptcy Judge Robert Brauer appears to have recognized this dilemma:
I can think of no set of facts where, if the net result rule were to be applied under section 547(b)(5), 547(c)(4) would ever be utilized. In re Garland, supra, 19 B.R. at 926.